Mary E. Wilson, Petitioner v. Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued November 15, 1979, before Judges CRUM-
LISH, JR., DiSALLE and CRAIG, sitting as a panel of
three.

*Louis Lesson,* with him *Mark A. Senick,* for peti-
tioner.

*Charles G. Hasson,* Assistant Attorney General,
with him *Richard Wagner,* Chief Counsel and *Edward
G. Biester, Jr.,* Attorney General, for respondent.

OPINION BY JUDGE CRUMLISH, JR., February 26,
1980:

The Pennsylvania Unemployment Compensation
Board of Review affirmed a referee who denied bene-
fits to Mary E. Wilson, finding that she voluntarily
left employment without cause of a necessitous and
compelling nature. Section 402(b)(1) of the Unem-
ployment Compensation Law (Act), Act of December
5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amend-
ed,* 43 P.S. §802(b)(1).

Wilson voluntarily left her job as an administrator of St. Paul's Monastery Manor, a residential care facility for the elderly.

Did she quit for cause of a necessitous and compelling nature?

Wilson alleges mental harassment and precarious working conditions following a series of alarming extraterrestial events which she was convinced seriously jeopardized the mental and physical welfare of the residents, the staff, and herself featuring, among other phenomena, self-igniting wastebaskets and the mysterious interruption of the elevator's electrical power. Nocturnal-capers by unidentified beings were the usual unusual happenings such as unprogrammed radio concerts, erratic clock revolutions, disappearance of the personal property of some of the residents, and laundry litter in the hallways.

Unable to master these phenomena on her own, she unsuccessfully sought the cooperation of the Monastery's Rector, the local police chief, and volunteer staff members; she installed a phone tap; rotated staff employees to eliminate suspicion; and, at wit's end, engaged a volunteer private detective. Her request to hire a security guard was dismissed as too costly.[1]

Finally, in a memorandum, she summarized these supernatural events for their submission to the Manor's Executive and Advisory Boards. The Rector induced the Executive Board to reject the presentation of her presentation. Convinced that she could no longer function effectively as an administrator, she appeared at the meeting and offered her resignation which was later formalized in writing.

---

[1] Interestingly enough, uniformed security service was contracted for by the Manor on the night prior to Claimant's resignation and for three successive days thereafter.

Eligibility for benefits requires one's departure to demonstrate "'adequate excuses that will bear the test of reason, just grounds for action, and always the element of good faith.'" *Arufo v. Unemployment Compensation Board of Review*, 37 Pa. Commonwealth Ct. 555, 558, 391 A.2d 43, 45 (1978).

Here, Wilson, a professional employee, held a Master's Degree in counseling. As the administrator, she was ultimately responsible for the care of 31 residents of the Manor and was in supervisory control of a staff of 20. Her duties were varied and included hiring and firing staff, making their assignments, preparing the budget, buying supplies, and setting fees within the guidelines established by the Executive Board. While her supervisory duties in the overall day-to-day operation of the Manor were extensive, she was not given the requisite corollary administrative power necessary to effectively discharge these duties.

We see a conscientious attempt here to remedy the problems at the Manor (undisputed in the record) and her frustrations by the Rector's rejection. Moreover, he overtly obstructed her efforts by publicly revealing her "top secret" discovery project. This is but one of the many obstacles she encountered during her vain pursuit of the villain.

In all, the record is replete with evidence in support of the finding that her termination rises to the level of a cause of a "necessitous and compelling" nature which prevented her from performing the important duties and responsibilities required of her in the proper management of the care facility. She had no reasonable alternative but to resign.

Accordingly, we

### ORDER

AND Now, this 26th day of February, 1980, the appeal of Mary E. Wilson from the order of the Unem-

ployment Compensation Board of Review, Decision No. B-164987, dated October 13, 1978, is sustained and the record is remanded to the Board for the computation of benefits due the claimant.

This decision was reached prior to the death of President Judge BOWMAN.

This decision was reached prior to the expiration of the term of office of Judge DISALLE.